And we'll hear the next case, Doe v. Trump Corporation. May it please the court, Thomas McCarthy for the Trump Appellants. Your honors, I'm joined by Mr. Glassman, who represents the other appellant, ACN. We've agreed to split our time so that I will go for four minutes. And then he will go for four, and then we'd reserve two minutes for a bottle that I would handle. May I make just one comment, since it's hard to tell when we're sitting virtually, who is interested in the courtroom, to make it just clear. And if I'm wrong, you'll say I'm wrong, but just make it clear. That's what, what's that issue here is, is not, is not the, the, the merits in any way, the truth of the charges made in this lawsuit, the civil lawsuit. The question is who will decide it? And that's the only, that's essentially the only question here is who will decide that issue. Is that, is that fair? That is correct, your honor. With that, this appeal presents two questions of arbitrability. One, whether appellants are entitled to enforce the arbitration clause in the IBO agreements. And two, whether appellants timely sought to enforce those arbitral rights. On the first question, plaintiffs are done in by the allegations of their own complaint, which is why their briefing runs away from those allegations and the decision below, and instead seeks to apply different law. On the second question, appellants fit neatly within circuit precedent on timeliness. But there's an important third question that much actually must be answered first. Who resolves those questions of arbitrability in the first instance? The court or arbitrator? And may I ask you a fourth question, which is, I think, the first question for me, which is what law applies? So there's a, it seems to me some dispute about whether North Carolina law applies. And if so, what, what other law applies? The second circuit precedent, federal common law. So could you address that first? Yes, Your Honor. I think that goes to the equitable estoppel argument. And both, both sides below in the, in the district court argued that federal law applies. The plaintiffs now changed course. And before the appellate court for the first time asked to apply North Carolina law, but they waived that, that, that choice of law by affirmatively deciding in favor of federal law below. In any event, it doesn't really matter because the truth is that North Carolina law actually has a looser test in place, two looser tests for equitable estoppel. So that if, if we meet the federal law, the second circuit precedent on equitable estoppel, which of course we do, then we would certainly meet any test under North Carolina law. What about the, the, the, the forfeiture issue or forfeiture waiver issue? And that is you, you waited eight months before asking to compel arbitration. And not only was it the passage of time, you, you, you requested and obtained substantive relief. You served subpoenas on a number of individuals. In those circumstances, why isn't the right to arbitration to the extent it unwaived? Your Honor, the short answer is that longstanding circuit precedent confirms that appellants asserted their arbitral rights in a timely manner. Rush and Sweaterby both hold that motions to compel arbitration. What about the dismissal of the federal claims? So if you go to arbitration, are those claims revived or are you, you only want arbitration of the state law claims? Those, those claims would not be revived. Under circuit precedent, it's a timely assertion of arbitral rights, even after a decision on a motion, a 12B6 motion. That's, that's what Rush and Sweaterby hold, that, that they can be timely even after quote unquote extensive involvement in litigation and a decision on 12B6. So we fall neatly within that because in this case, the district court had only held one conference, only made two procedural rulings, and no discovery had taken place at the time. And at the time, our 12B6 motion remained pending. It wasn't even decided yet. And with that minimal passage of time, we neatly, very easily fall within circuit precedent that our assertion of our arbitral rights was, was timely. And Your Honor, just to make sure I clarify, I think you brought up the issuance of subpoenas. There were just preservation subpoenas and nothing else was actually served. So there was no discovery conducted by the time appellants asserted their arbitral rights. So we think that that issue is an open and shut one. And frankly, the plaintiffs did not even address Rush or Sweaterby in their briefing. So as a practical matter, it appears that they've essentially conceded that issue. I want to get back to the first issue, which is that... Well, you're, you're, you're, you're essentially out of time, but you, you, you want to take your rebuttal time to address it? I can save it for rebuttal, Your Honor. All right, then let's hear from Mr. Glassman. Thank you, Your Honor. May it please the court, Ben Glassman on behalf of Appellant ACN Opportunity, LLC. ACN is in a different position because ACN does have an arbitration agreement with the plaintiffs. ACN has not been sued by the plaintiffs, but ACN does have a dispute with the plaintiffs. There is a controversy with the plaintiffs. Because if you look at the amended complaint that the plaintiffs have filed against the defendants, it makes quite clear that there are allegations that ACN's marketing... What is it, what is it that you think should be arbitrated between the plaintiffs and ACN if, if they have not asserted a claim against ACN? ACN would seek a declaration from the arbitrator that it is not liable to any monies paid to ACN, that its business model was lawful, and that its marketing materials were not false or misleading. So it's a paritory judgment. In essence, that's correct, Judge Lohier, yes. But, but the plaintiffs have not made a claim that ACN is liable to them. You are correct. You are correct in that, Judge Chin, but neither have the plaintiffs said that they will never make a claim. Have you brought, have you brought an action for a declaratory judgment? Have you filed a complaint asking for declaratory judgment? No, Your Honor. What we first did was we sought, pursuant to the arbitration agreements, to commence arbitration of the issue with plaintiffs. That is not successful because of the pseudonymity order. We need the district court's assistance to compel the parties to arbitration. So after the attempt to file the arbitration, we then sought the assistance of the district court consistent with section four of the Federal Arbitration Act to compel the dispute between ACN and the plaintiffs to arbitration. So I think this is actually, it's, there are plenty of cases and we've cited them in the, in the briefing where a party seeks to compel a dispute to arbitration, even though it has not at that point been sued. But what is the, what is the mechanism under the agreement to raise a dispute with another party, a counterparty, before asking for arbitration? That is, you don't just ask for arbitration in the ordinary course. You raise the dispute with the other party. What is the mechanism here? I think that so long as there is a dispute, it's a, the very broad arbitration, so long as there is a dispute relating to the IBO agreement. Now, how that is perceived, of course, is a question in whether there is a dispute to be arbitrated would, if there is a disagreement about that, would be a question in the first instance. No, I understand. But in the ordinary course, in the arbitral context, the party agreed, or the party in your case that wants some form of declaration, approaches the dispute, can we resolve it before you go to arbitration, I think. So is there a mechanism in this agreement for doing that prior to trying to trigger the arbitration process? I am unaware of a mechanism in this agreement for trying to resolve that issue prior to the arbitration process. Now, of course, in this case, the parties have interacted and the ACN has sought arbitration unsuccessfully. Is there a case on point that is a case like this where a party, because I have not seen it, where a party seeks a declaratory judgment and thereby triggers in an anticipatory way an arbitral proceeding? Sure. Effectively, some of the cases that we've cited in our briefs, including Community State Bank v. Strong and the District Court decision of Doctors Associates v. Hollingsworth, which is the District of Connecticut case, would be examples of those types of situations. Is there any case where a recipient of discovery demands or subpoenas successfully moved to compel arbitration? I am not aware of a case in which a party moved to compel arbitration. In that case, there are plenty of cases, including the ones that I cited, where a party brings a new proceeding under Section 4. And in ACN's view, there's no law that would prohibit the party from doing what ACN has done here. And in fact, it would be a step in the wrong direction and probably pragmatically a really bad decision to incentivize a party to start a brand new proceeding. You wanted to, you tried to commence arbitration proceedings, but you didn't have the names, the identities. Is that, that was the problem? Yes. And was the District Court's order allowing the plaintiffs to proceed under pseudonyms, that's not appealed, right? It's not the subject of this appeal. That's correct. I think that would be, I'm not sure that that would be capable of being appealed at this interlocutory stage. Okay. Thank you. Thank you, Your Honor. We'll hear from the plaintiffs. Good morning, Your Honors. Roberta Kaplan from the Kaplan Hacker Firm on behalf of plaintiffs. Despite all the briefs and litigants and arguments in this case, we believe this is really a pretty straightforward commercial dispute. The issues presented on this appeal can, and we believe should be resolved based on, on core principles that really aren't very controversial. One, arbitration is fundamentally a matter of consent. Two, gamesmanship, or as Judge Schofield put it, tactics that result in prejudice can and should result in waiver. And three, third party recipients like HCN are limited by the word, what actions they can take as a non-party. They certainly do not have standing to hijack an ongoing litigation and force them to arbitration when they have not chosen to intervene in the case. If they had filed, just on the HCN part, if they had filed a declaratory judgment action in federal court, would any of your clients been able to trigger the arbitration clause? If they had sued our clients in federal court, our clients would have had the option, certainly, Your Honor, to trigger the arbitration clause. Okay. Whether or not they would have done that is a separate question, but they certainly would have. Could you explain, could you explain why the plaintiffs are, are pseudonyms? One would ordinarily think that in a class action like this, we'd use your names. Sure. When this case was first filed, Judge Sachs, first of all, let me begin with our plaintiffs. Our plaintiffs are very working class or below working class people. One's a hospice worker. One's a delivery man. One of them has been homeless. At the time we filed this case, which feels like a very different world, people who brought lawsuits against President Trump and his family were subject to a barrage of abuse on social media and elsewhere. And unlike other parties who have sued Donald Trump, either officially or here, obviously, in his personal capacity, our clients were unable, we believe were unable, to really be prepared and to defend themselves against that kind of a doxing attempts or onslaughts like that. We understand, of course, that pseudonymity has to be adjusted. The Trumps know who our plaintiffs are already. And we were prepared to let ACN know who our plaintiffs were as long as they agreed to do what we wanted, which is not to put our plaintiffs' names up on social media, on Twitter, etc. So if we were negotiating that with ACN, they could have filed an arbitration, but they filed this instead. And we certainly would have let them know the names, again, as long as they agreed not to put it out there in the public, thereby causing risk to our clients. Let me go on, Your Honor. So let me start with waiver, because in a lot of ways, we think that is very emblematic of how defendants have acted here. Defendants were aware of plaintiff's arbitration agreement with ACN, in this case, from the very start. They referred to it in their very first sentence of argument in the district court. Joanna Hendon, their counsel, who started with me and Paul Weiss more than 20 years ago, is a very good lawyer. And it's very hard, if not impossible, to believe that they didn't seriously consider whether plaintiff's claims were arbitral. Yet their list of anticipated motions that was required by the district court at the outset never mentioned arbitration. Instead, they decided to hold that motion back for more than eight months, and they tried to wring every possible advantage they could out of the district court, obtaining a state of discovery, getting federal claims dismissed, and serving, as already has been discussed, document preservation subpoenas on our friends and our plaintiffs, which, from our client's perspective, was no easy or ordinary thing. Significantly, Your Honor, this isn't a case where you have to guess about defendants' motivation. They hold Judge Schofield in a letter that they believe they had a right to arbitrate, but they were intentionally holding that motion back to see if they could first get the district court to dismiss the case. In other words... Where is that letter? Do you have a site for that letter? ...Polimeral Appendix 16, Judge Schiff. Thank you. In other words, they admitted that their conduct was so obvious that it prompted Judge Schofield, who I would respectfully suggest is not really known as an activist judge, to conclude that their tactics caused prejudice, disrupting the fundamental purpose of the FAA and waived their right to arbitrate. That same pattern has continued before this court. The Trump defendants asked Judge Schofield to resolve arbitrability. Whether plaintiffs plans against them must be arbitrated. You can look, it's in a record, defendants opening brief on this, read it for yourself. It could hardly be any clearer what they were asking Judge Schofield to do. Yet, when the Judge Schofield wrote against them, you then just heard my friend on the other side come to this court and say they didn't really mean what they said to Judge Schofield. Arbitrability, which, by the way, Judge Lynch has made very clear in the Drs. Associates case, does not involve contract formation, cannot involve contract formation, was an issue for the arbitrator. The same is true for HCN. HCN didn't move to intervene in this case that it could have under Rule 24. Obviously, that motion would have been granted. It sat back and waited, remaining a non-party without facing any of the risks of party status. And then it filed a motion 16 months into the case, seeking to force the whole case of arbitration only when we move to compel in connection with the subpoena. That's not how the rules work, Your Honors. Existing litigation defines the relevant case of controversy, and HCN is not a party to this case. The Supreme Court invaded, made it clear that courts cannot make up hypothetical cases or controversies. And Judges Kaplan and McMahon were surely right when they said that Rule 45 governs and that non-parties cannot force discovery disputes in cases before the federal court into arbitration. Let me turn now to Admiral Bolschoff. If there were a controversy, that is, if we disagreed with you, then you would agree, I guess, based on your answer to my initial question, that this would have to be arbitrated, at least with HCN. I believe that HCN has the right to arbitrate a controversy with our clients in arbitration, but that is not this case. For the reasons I'm just about to get to, these claims are entirely separate from any claims that HCN might bring. This is about what Donald Trump said, not what HCN said. It's not about HCN's marketing materials. It's a fraud case, not a contract case, not a tortious interferential contract case. It's a fraud case about what Donald Trump said. And in fact, if you look at the IBO agreements in this case, which are at the appendix of Court 34, it's telling that you neither hear defendants of HCN talking about them because there's nothing in them that has anything to do with our I take it your position is that if they do not have the right to seek to arbitrate that the contract case, they don't have forgetting the fraud allegations. We wanted what is in effect a declaratory judgment that we're not liable for breach of contract, and that's arbitrable. We can't do that. They may be able to bring a claim under their contract with plaintiffs in this case and arbitration, but there is no contract between plaintiff and Donald Trump and none of the issues. No, no. I was asking the first part though, just looking at HCN, whether they alone, it certainly doesn't follow that Donald Trump, the Donald Trump parties would be subject to arbitration. I'm not suggesting that. And I frankly don't think it, but, but the question is, could they, could HCN itself alone on the contract issue, seek arbitration to, to, to clear itself of any possible contract liability? Yes. Yes. I would say, yes, they can do that. Two, we were on the road to negotiating with them, as I said before, giving them the names of the plaintiffs, but so as long as it was kept from the public and from social media, and, and three, what they could not do though, and I think the court's made it clear, is somehow stop their rule 45 obligations in this case as a result of that arbitration. So they can still do an arbitration, but they still have to comply with the subpoena that's been duly served. They have said that it's not, the dispute is really not about the subpoena. This is a declaratory judgment issue. Well, that's fine. Again, they can bring that arbitration, Judge Lohier, but they still have to produce the document for C and for the subpoena, which is what started this whole thing when we moved to compel on that subpoena. So would you move to, would you, would you just address the Trump organization and CONTACT in particular? Sure. Yeah. So they, they rely heavily on the CONTACT case. And I think, let me say a few things about CONTACT. First of all, it's a very kind of a unique case based on its facts. It's a case in which the non-signatory entities were successors in interest to the original signatory and had exactly the same name. I think it was CONTACT LLP and CONTACT LLC. I might've gotten the order wrong. And then CONTACT Corporation. It wasn't like there was some separate entity like Trump and ACN. These were the same names. Two, the parties were already operating and performing under the contract. There was no question of contract formation like there is here in CONTACT. Third of all, this court has already distinguished CONTACT twice on the facts. Once by Judge Lynch in the, the Dachner's associate case, and another time by Raw in the Raw's case. And the court has made it very clear in those two subsequent cases that, that CONTACT is really limited to its facts. It's not really a case about equitable estoppel. It's a case in which a successor in interest with the same name already performing under a contract was understandably incorrect. So you say that, but then, you know, we could say that about every precedent. But it does embrace this idea of relational sufficiency and relational sort of look, we should look at the relations. Here, we've got a, you know, pretty close alleged relationship between the Trump organization and, and ACN. And of course, as they point out in the complaint itself, ACN is all over it. You could have disagreed that more strongly, Judge Lohey. So in CONTACT, as I said, you have a CONTACT one, which signed the agreement, and CONTACT three, which was operating under the agreement with sports and arbitration. Here, you have two separate parties. There's an employee relationship. They abandoned any agency. And as Judge Spokiel rightly said, asserting that they are somehow so related that our plaintiffs should have assumed that when they signed the agreement with IBO, with, with ACN, they were agreeing to arbitrate against Trump makes no sense since Trump's old pitch here, the essence of his fraud. What made plaintiffs, by their own account, decide to invest in ACN despite their reservations is because Trump said he was independent of ACN. Trump said he wasn't accepting any money from ACN. Trump said he himself had had his own lawyers look at ACN and done due diligence. And they had concluded that it was a good investment. That A, doesn't have anything to do with ACN sales materials. And B, suggested exactly the opposite to our clients, that they were independent. And that's what gave Trump's endorsement its power. All right. Thank you. Well, isn't it, it's just, just one question. Isn't it ironic then that, that they are saying, they are, they have taken the position that they're completely separate, which would, which, which would militate against the arbitrability. But, but you're taking the opposite position, which is you're saying they were, you should pardon the expression in bed together. And if they were, perhaps the, the, the arbitration should, in a contact like situation, they're closely enough related that the, that the arbitration clause should apply to them too. I have said it in lots of other cases that the, the honorable question for arbitration is whether the, the party against whom arbitration is being sought had reason to believe when the arbitration was signed, that they would also have to arbitrate against Donald Trump. Given the allegation in this case, there was no way you can conclude that. And with respect to ECN in the case, I don't think our allegation is necessarily going to be Judge Sack that they were in bed together. We allege a long history of the Trump organization of using their name and their access to celebrity apprentice to fraudulently endorse a whole bunch of other things. ACN is not the only one. And if this was a pattern and practice of the organization that was used most recently, almost prominently, New York Times said the most money he got was from ACN with respect to ACN. I don't think that that pattern and practice of the Trump administration was created by ACN. It was created by the fraudster, Donald Trump and his children. All right. Thank you. So I'm sorry, but I do have one other question about North Carolina law. So your adversary says that you argued under federal common law exclusively without reference to North Carolina law. Is that correct? So what happened is they moved under federal common law. We responded under federal common law. And I have to confess error here. Judge Schofield, in her opinion, got it right and said that under Arthur Anderson, which clearly is the operable opinion, state law applies. If you look at North Carolina law, it's clear that equitable stuff was going to apply it. And I would, I would urge your honors to look at their citations in that regard. They cite four circuit cases decided before Arthur Anderson, applying not North Carolina federal common law. And the cases come out of the wrong Carolina. They come out of South Carolina, not North Carolina. So I think you should look very carefully at how defendants cited those brief. I have to say, I was quite surprised. But you're relying primarily on Smith Jamison, I take it? Yes. Yes, your honor. Okay. All right. Thank you. We'll hear from Mr. McCarthy. Thank you, your honors. Um, contact requires this case to go to arbitration. Though plaintiffs want to dismiss it. This court has held repeatedly reiterated their contact will repeatedly and held that parties explicit where parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability that incorporation serves as a clear and unmistakable delegation of such issues to the arbitrator. It's undisputed that IBO agreements, select arbitration under triple A's commercial rules. And that selection constitutes such clear and unmistakable evidence to be sure. As judge Lillie pointed out, contact requires a measure of relational sufficiency before allowing a non-signatory to enforce that delegation. But the relational sufficiency contact makes very clear. It has nothing to do necessarily to do with the facts of contact. The relational sufficiency is the intertwinedness prong of the court's equitable estoppel test. Ms. Kaplan points out that the parties on both sides, frankly, uh, continue to really treat each other as if they were all subject to the agreement, not withstanding the change in corporate form, because it was contact LLP, contact, whatever, you know, X, Y, and Z. So this is different, uh, in, uh, analytically from, from this case where clearly there's a distinction between the Trump organization and Trump defendants and, uh, ANC. Respect for your honor. It's, it's that the point about the parties being, you know, affiliates in some respect in contact, in contact does not matter here. The point that contact makes, and the court has applied contact repeatedly, is that the relational sufficiency is met by the intertwinedness prong of the equitable estoppel test. And that intertwinedness prong is easily met here. Even the district court concluded. So, and that's because after paragraph after paragraph of plaintiff's own allegations articulates a close relationship between the Trump and ACN. And they can't run away from that now. The claim is that at the time, uh, the plaintiffs believed, uh, the Trump's were independent. Um, and only learned of the close relatedness, uh, later on, does that make this case different from contact? Your honor, that still wouldn't make this case case different than contact because it doesn't matter what the plaintiffs might say now it's an objective test and the allegations of the complaint go, the Trump appellants allegedly were working together with ACN through ACN branded media, videos, DVDs, uh, publications to promote ACN together. So this is your position next to each other. Is it your position that they were indeed related? Certainly sufficiently so to make the equitable estoppel test and certainly sufficiently to meet the intertwinedness prong of that test, which is all that's required for contact to apply. Contact applies very easily in this case. I want to address one more issue before my time runs out. And that is plaintiffs repeatedly lob accusations of gamesmanship and tactics at, at the Trump appellants for not asserting their arbitral rights for eight months after the complaint. But what they label as tactical and gamesmanship is something that this court has endorsed time and time again, the assertion of arbitral rights while it's 12 B six motion is pending falls easily within this court's longstanding precedent over decades and for the court to do all this for a court to decide that this would somehow be waiver here would be a sharp break with precedent. That what that tells you is that what plaintiffs are really doing here is they're throwing these pejorative labels around to deflect from their own gamesmanship. Everyone here agrees and understands that if ACN were listed in the complaint as a defendant named in the caption, that this thing would be arbitrable against ACN. No question about it. And if that were the case, it would likewise be arbitrable for the, for the Trump appellants as well, too. All they've done is take these, leave ACN out of the caption, not withstanding the 700 plus references to ACN in the actual complaint, not withstanding the a hundred plus references to the IBO agreements, not where we're standing, dozens of other allegations to put them together. Excuse me. Are you suggesting that they can't, uh, choose to, to, to bring suit only against the, uh, uh, Trump defendants, even if their principle or motivation, because their principle motivation is to avoid, uh, arbitration that, that the fact that they're doing it for the purpose, uh, the principle purpose of avoiding arbitration has, has a impact on the way we should treat the, uh, the, the case. Two answers to that, your honor. Number one, yes. If they're trying to evade arbitration, then that matters. The fourth circuit, the fifth circuit, the seventh circuit has held. So, so has this court in Smith and Ron. But second, if there, even if there were a way that they could do that in the abstract, they certainly could not do it with the complaint that they filed here. That puts the Trump, uh, appellants and ACN together in allegation after allegation, after allegation. We recited all these in our briefing, dozens and dozen, done dozens of these paragraphs of their complaint. They did not respond to any of that in their, in their marriage brief because they can't, they want to run away. Is there anything, is there anything beyond, before the filing of the complaint, uh, that would have, um, indicated to us that the, uh, signatory, that is the plaintiffs here could, uh, reasonably have understood that they were consenting to arbitrate their claims with, uh, the Trump organization or the defendants, uh, uh, and that the Trump organization could have come in and sought to invoke the arbitration clause. So you're, you're relying on the, you're, and I understand you're relying on the, the, the, uh, complaint and what it says about ACN and so on, but is there, is there anything prior to the filing of the complaint? Yes, Your Honor. It's the things that they point to in the claim, in the complaint in terms of the representations that, that they allege that, that, that the Trump's made, uh, on behalf of ACN were a made on behalf of ACN and also made always in the context of ACN branded media, videos, DVDs, et cetera, their claims are about, uh, allegedly being duped into entering these very agreements where the, the, the alleged duping was all happening with ACN branded materials with ACN, those facts right there, whether they go through them, you know, in the complaint or not. The fact that that's how it happened is what shows that those parties are together, at least for the purposes of the equitable estoppel attest and the intertwinedness prong of it, which I may be, I may be a dog barking in the cellar alone here on this, uh, North Carolina issue, but I'm trying to figure out, you, you said to me that, uh, they waived the North Carolina law issue. And yet, uh, as Ms. Kaplan pointed out, Juskofield, uh, references North Carolina law, uh, not withstanding whatever the plaintiffs may have done or not done, um, can't we, and should we, uh, view the fact that, uh, cause it is a judgment of the district court that we're considering, uh, consider the fact that Juskofield referenced, uh, North Carolina law, uh, and, and then consider North Carolina law. And you also said, by the way, that North Carolina law is better for you. Um, I don't read it that way because I read Smith-Jameson, I think it is, uh, as setting out a somewhat stricter standard, uh, for allowing a non-signatory to trigger an arbitration clause between two parties. So first, Your Honor, though Judge Juskofield mentioned North Carolina law, she just did that, mentioned it. The issue of North Carolina law was never pressed nor passed upon. And that's what's required for the court to be able to take it up. When a party affirmatively chooses, as the plaintiffs did here, federal law, that is an affirmative decision not to choose North Carolina law. And this court's precedent is replete with instances where a party choosing, making one choice of a form of law over another constitutes a waiver. And a waiver is not something the court can save as opposed to a forfeiture. Separately... You're, you're well over your time. With respect to the... Go ahead, Judge Loewe. There was a second question there. Yes. I think your question, Judge Loewe, was about, um, North Carolina law. And you mentioned Smith-Jameson, I believe. Yes. So two things. Number one, um, North Carolina, and these are North Carolina cases. They, they routinely apply the Fourth Circuit's test under American Bankers and Brantley, and the American Bankers test only requires that the signatory's claims against the non-signatory make reference to or presume the existence of the agreement, which certainly happens here, especially given the hundreds of references to the IBO agreements and the complaint and the complaints. The other, the Brantley test, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of interdependent and concerted conduct by the non-signatory and the signatory. The problem... Which is exactly what's happened here in terms of... The problem, the problem is that Smith-Jameson is 2018, I believe. And the cases from the Fourth Circuit are well before that. So it seems that North Carolina law has overtaken whatever the Fourth Circuit has done, but I understand your, your argument. Respect for your honor, I disagree. Smith-Jameson is distinguishable because unlike that case, what happened here is the plaintiffs actually alleged that the appellants worked together with ACN to dupe the plaintiffs into joining these agreements, and those are the exact agreements that underlie their claims. That's not what happened in Smith-Jameson. In addition to that, Smith-Jameson, I think is out of step with the rest of North Carolina law. You're out of time. With respect to the issue of the stay until the appeal is heard, the appeal has now been heard, but the stay will remain in place until we vacate it. Just so we're clear. Okay. Thank you, your honor. Yeah. So that, you know, until we vacate it. Thank you, your honor. Thank you both. Thank you all three of you for your arguments. The court will reserve to.